Of Counsel:
FUKUNAGA MATAYOSHI CHING & KON-HERRERA, LLP

WESLEY H. H. CHING        2896
SHEREE KON-HERRERA        6927
841 Bishop Street, Suite 1200
Honolulu, Hawaii  96813
Telephone:  (808) 533-4300
Facsimile:  (808) 531-7585
Email:        whc@fmhc-law.com
                  skh@fmhc-law.com

Attorneys for Defendant
SAARMAN CONSTRUCTION, LTD.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation, | ) CASE NO. 16-00315-DKW-KSC |
| | ) |
| | ) DEFENDANT SAARMAN |
| | ) CONSTRUCTION, LTD.'S |
| Plaintiff, | ) MEMORANDUM IN OPPOSITION |
| | ) TO PLAINTIFF STATEMENT |
| vs. | ) FARM FIRE AND CASUALTY |
| | ) COMPANY'S MOTION FOR |
| SAARMAN CONSTRUCTION, LTD., | ) SUMMARY JUDGMENT FILED |
| | ) 9/5/17; CERTIFICATE OF SERVICE |
| | ) |
| Defendant. | ) |
| _____ | ) |

# TABLE OF CONTENTS

Table of Authorities ..................................................................................iii-iv

I.      INTRODUCTION .................................................................................1

II.     SUMMARY OF ADDITIONAL MATERIAL FACTS ................................2

        A.      The Golf Villas Project ........................................................2

        B.      The Subject Accident ...........................................................5

        C.      The Underlying Action and Instant Declaratory Relief Action ..........7

III.    LEGAL STANDARD ...........................................................................8

        A.      Summary Judgment ............................................................8

        B.      Hawaiʻi Insurance Law .......................................................9

IV.     ARGUMENT .....................................................................................11

        A.      The Claims in the Underlying Lawsuit Do Not Relate "Solely
                to Saarman's Alleged Negligence" ....................................11

        B.      The Claims in the Underlying Lawsuit Potentially Fall Within
                the Scope of Additional Insured Coverage .........................13

        C.      The Saarman-Ocean Tile Subcontract Constitutes an "Insured
                Contract" under the State Farm Policy ..............................15

        D.      State Farm Has Failed to Conduct a Reasonable Investigation
                and Instead Chose to File a Premature Motion for Summary
                Judgment in Violation of Its Obligations as an Insurer ....................17

        E.      State Farm's Motion for Summary Judgment Is Premature and Should
                Be Denied Pursuant to Rule 56(d) ....................................19

V.    **CONCLUSION**   ....................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Arthur v. State of Hawaii,* 138 Hawai'i 85, 377 P.2d 26 (2016) ...........................18

*Allstate Ins. Co. v. Ponce*, 105 Hawai'i 445, 99 P.3d 96 (2004) ..........................10

*California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*,
    818 F.2d 1466 (9th Cir. 1987)   .......................................................................9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)  .........................................................9

*Conestoga Services Corp. v. Executive Risk Indemnity, Inc.*,
    312 F.3d 976 (9th Cir. 2002)  ..........................................................................9

*Dairy Road Partners v. Island Insurance Co., Ltd.,*
    92 Hawai'i 398, 992 P.2d 93 (2000)  .................................................. 9-10, 18

*First Ins. Co. of Hawai'i, Inc. v. State*,
    66 Haw. 413, 665 P.2d 648 (1983)  ...............................................................10

*Eisenberg v. Insurance Co. of North America*,
    815 F.2d 1285 (9th Cir. 1987) .........................................................................9

*Espaniola v. Cawdrey Mars Joint Venture,*
    68 Haw. 171, 707 P.2d 365 (1985)  ...............................................................12

*Gilbane Bldg. Co. v. Admiral Ins. Co.,*
    664 F.3d 589 (5th Cir. 2011)  ................................................................. 14-15

*Intel Corp. v. Hartford Acc. and Indem. Co.,*
    952 F.2d 1551 (9th Cir. 1991)  ......................................................................16

*Retherford v. Kama*, 52 Haw. 91, 470 P.2d 517 (1970) ...................................10, 17

*Schafer v. Paragano Custom Bldg, Inc.,*
 2010 WL 624108 (N.J. Super. Ct. App., Feb. 24, 2010) ..............................14

*Sentinel v. First Ins. Co. of Hawaiʻi, Ltd.,*
 76 Haw. 277, 875 P.2d 894 (1994) ..............................................................16

*Shannon v. B.L. England Generating Station,*
 2013 WL 6199173 (D.N.J. Nov. 27, 2013) ....................................................14

*Standard Oil Company of California v. Hawaiian Insurance & Guaranty*
 *Company, Ltd.,* 65 Haw. 521, 527, 654 P.2d 1345, 1349 (1982) ....................19

*State Farm v. Vidal,* 2013 WL 5786890 (S.D. Inc. Oct. 28, 2013) .......................17

*Sturla, Inc. v. Fireman's Fund Ins. Co.,*
 67 Haw. 203, 684 P.2d 960 (1984) ................................................................10

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n.,*
 809 F.2d 626 (9th Cir. 1987) ...........................................................................9

## STATUTES & RULES

Federal Rules Civil Procedure 56(c) .................................................................. 8-9

Federal Rules Civil Procedure 56(d) ....................................................................19

Hawaiʻi Revised Statutes §431:10-237 .................................................................10

Hawaiʻi Revised Statutes §431:10-222 .................................................................18

Hawaiʻi Revised Statutes Chapter 386 ..................................................................11

**DEFENDANT SAARMAN CONSTRUCTION, LTD.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF STATEMENT FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT**

## I.      INTRODUCTION

Plaintiff STATE FARM FIRE AND CASUALTY COMPANY ("State Farm")'s Motion for Summary Judgment begins with the faulty premise that the claims in the underlying lawsuit "relate solely to Saarman's own alleged negligence." See Introduction to State Farm MSJ at page 2.  The only information that State Farm offers for the Court's consideration from the underlying lawsuit are the allegations in the Complaint and Third-Party Complaint.  In actuality, preliminary discovery in the underlying lawsuit has already uncovered various material facts to dispute State Farm's contention.

After two initial denials, State Farm accepted Defendant SAARMAN CONSTRUCTION, LTD. ("Saarman")'s tender of defense.  State Farm also accepted the tender of defense of its named insured and Saarman's subcontractor OCEAN TILE, LLC ("Ocean Tile").  State Farm did so because the allegations in the underlying lawsuit and the information readily available to State Farm raised the possibility that the claims against Saarman and Ocean Tile were potentially covered under the State Farm policy.  Now, with nothing more than these same allegations, State Farm seeks a dispositive ruling on indemnity coverage even though the underlying lawsuit is still in the preliminary stages of discovery.

Saarman respectfully submits that if State Farm had conducted a reasonable investigation before filing its Motion for Summary Judgment, it should have learned that disputed issues of material fact clearly exist regarding whether or not the acts or omissions of its named insured Ocean Tile in the performance of ongoing operations for its additional insured Saarman, caused bodily injury to the decedent Lawrence Deponte.  If State Farm had conducted a reasonable investigation, it also should have learned that its insured entered into an "insured contract" with Saarman and that discovery in the underlying lawsuit supports a finding of liability under the same "insured contract."  Finally, if State Farm had conducted a reasonable investigation, it should have realized that the many disputed issues of material fact in both the underlying lawsuit and this declaratory relief action preclude a summary ruling on indemnity coverage.  As a result, State Farm's Motion for Summary Judgment should be denied as an improper and premature attempt by State Farm to disclaim its obligations under its policy where the underlying lawsuit is still pending.

## II.    SUMMARY OF ADDITIONAL MATERIAL FACTS

### A.    The Golf Villas Project

Saarman was the general contractor for the Capital Improvement Project, Golf Villas at Mauna Lani Resort, Kamuela, Hawaii 96743 ("Project").  See Declaration of Ben Tsai at ¶2.  On or about April 2, 2015, Saarman entered

into a Subcontract Agreement for Job #14511 ("Subcontract") with Ocean Tile for the installation of tile on the second floor lanai decks at the Project.  Id. at ¶5; Exhibit "A", Subcontract.  The Subcontract Agreement between Saarman and Ocean Tile for the Project included two Indemnification provisions at Section 5.1.3 and Article 9 and Insurance requirements at Article 17.

Section 5.1.3 of the Subcontract provided in pertinent part –

> **In the event Subcontractor uses any of the Contractor's equipment**, materials, labor, supplies or facilities, **including** without limitation, tools, safety planks, ladders and **scaffolds**. . . . **Subcontractor shall maintain and be solely responsible for maintaining any such equipment**, materials, labor, supplies or facilities **in a safe condition. Subcontractor will indemnify Contractor and hold Contractor harmless from any and all liability**, claims, actions, demands, damages, and expenses, including without limitation, reasonable attorneys' fees **arising out of injury to persons or property in any way connected with such use of Contractor's** services, facilities, or **equipment, regardless of the negligence and/or misconduct of Contractor. . . . Subcontractor accepts any and all of Contractor's equipment**, materials, labor, supplies or facilities **as furnished**.

See Exhibit "A" at §5.1.3 (emphasis added).

Article 9 of the Subcontract further provided for Indemnification by Ocean Tile in favor of Saarman in pertinent part as follows:

> 9.1    With the exception that this provision shall in no event be construed to require indemnification by Subcontractor to a greater extent than permitted under the public policy of the State of Hawaii, **Subcontractor shall indemnify, defend and hold harmless** Owner and **Contractor**. . . (the "Indemnitees"), **from any and all claims**, demands, causes of action, damages,

3

costs, expenses, actual attorney's fees, losses or liability, in law or in equity of every kind and nature whatsoever ("Claims") **arising out of or in connection with Subcontractor's operations and/or performance under this Subcontract for, but not limited to:**

9.1.1 **Personal injury, including, but not limited to, bodily injury,** emotional injury, sickness or disease, **or death to persons, including, but not limited to, any employees or agents of Subcontractor**, . . . **caused or alleged to be caused in whole or in part by any negligent act or omission of Subcontractor or anyone directly or indirectly employed by Subcontractor or anyone for whose acts Subcontractor may be liable regardless of whether such personal injury or damage is caused by an Indemnitee.**

. . . .

9.1.6 Failure of Subcontractor to comply with the insurance provisions of the Subcontract.

9.1.7 **Any violation or infraction by Subcontractor** of any law, order, citation, rule, regulation, standard, ordinance or statute **in any way relating to the occupational health or safety of employees, including**, but not limited to, safety regulations, **the use of any Indemnitee's** or other's equipment, hoist, elevators, or **scaffolds**.

The indemnification provided herein shall extend to Claims occurring after this Subcontract is terminated and/or completed as well as while it is in force. The indemnity provisions apply regardless of any active and/or passive negligent act or omission of any Indemnitee. Subcontractor, however, shall not be obligated under this Subcontract to indemnify an Indemnitee for Claims arising from the sole negligence and/or willful misconduct of an Indemnitee or their agents, employees or independent contractors who are directly responsible to an Indemnitee.

9.2 Subcontractor shall:

4

9.2.1  At Subcontractor's own cost, expense and risk, defend all Claims that may be brought or instituted by third persons, including, but not limited to, governmental agencies or employees of Subcontractor, against any Indemnitee;

9.2.2  Pay and satisfy any judgment or decree that may be rendered against any Indemnitee or their agents or employees, or any of them, arising out of any such Claim; and/or

9.2.3 Reimburse any Indemnitee for any and all legal expense incurred by any of them in connection herewith or in enforcing the indemnity granted in this Indemnification Rider.

See Exhibit "A" at Article 9 (emphasis added).

Pursuant to Article 17 of the Subcontract, Ocean Tile was required to procure Commercial General Liability insurance, with minimum limits of not less than $1,000,000 each occurrence, to provide insurance for bodily injury liability and including coverage for "(a) Premises and operations, . . . (c) Contractual liability insuring the obligations assumed by Subcontractor in this Agreement, . . . (e) Personal injury liability", and naming Saarman as an additional insured with respect to liabilities arising out of Ocean Tile's performance of the work under the Subontract.  Id. at §§17.1, 17.3, 17.4, and 17.5.

## B.    The Subject Accident

On or about September 16, 2015, Lawrence Deponte was a journeyman and working foreman for Ocean Tile at the Project.  See Exhibit "B", Wallace Deponte testimony at 31:11 to 32:17.  At approximately 10:30am that

5

morning, Lawrence Deponte was working on a scaffold to lay tile on the second-story lanai of Building "I", and laborer Gilbert Ruiz was mixing cement on the ground, when Lawrence Deponte fell approximately 7 to 8 feet to the ground. See Exhibit "C", Gilbert Ruiz testimony at 43:18 to 44:4; 50:8-24, 83:13 to 86:10; see also Exhibit "D", statement. The scaffolds that Ocean Tile used on the Project were owned by Saarman but inspected daily by Ocean Tile before using them. See Exhibit "B" at 33:14 to 34:3, 39:16 to 41:6; see also Exhibit "F", Monique Deponte testimony at 21:10 to 22:11, 25:15-23, 29:1 to 30:5, 33:9 to 34:5. On the morning of the accident, Lawrence Deponte was responsible for inspecting the scaffold and did not report any problems or concerns with the scaffold being used. See Exhibit "B" at 44:12-23.

After the fall, Lawrence Deponte reportedly took about 10 minutes to catch his breath before trying to return to work on the same scaffold. See Exhibit "C" at 63:3 to 79:15. When Mr. Deponte could no longer work, Gilbert Ruiz drove Mr. Deponte to his house to rest. Id. It was only after Mr. Deponte had seizures for a couple hours when an ambulance was finally called at 4:51 p.m. and left with Mr. Deponte at 5:20 p.m., and Lawrence Deponte died while being transported to Kona Hospital. See Exhibit "C" at 169:21 to 172:16, 174:13 to 176:19; see also Exhibit "E", Hawaii EMS report.

The undisputed procedure following a jobsite accident on the Project was for Ocean Tile to call an ambulance for the injured worker and notify Saarman as the general contractor, but neither of these requirements was done promptly.[1] See Exhibit "B" at 59:15 to 62:18; Exhibit "F" at 48:19 to 49:13.  It is further undisputed that Ocean Tile did not notify Saarman about Lawrence Deponte's fall at the job site until after he died in the evening of September 16, 2015.  See Tsai Declaration at ¶4; Exhibit "F" at 48:19 to 49:13.

## C.    **The Underlying Action and Instant Declaratory Relief Action**

The Underlying Action is still in the preliminary stages of discovery. See Declaration of Wesley H.H. Ching at ¶9.  Plaintiffs have not filed their pretrial statement, and trial has yet to be set.  Id.  Nevertheless, as discussed above, even preliminary discovery has uncovered evidence and testimony to support a finding that Plaintiffs' injuries and damages were caused by Ocean Tile's acts or omissions in the performance of its subcontract work on the Project.

Based on the terms of the Subcontract Agreement, Saarman understood that Ocean Tile was contractually required to provide indemnity and insurance protection benefiting Saarman for claims like the plaintiffs' claim in the Underling Lawsuit and/or claims by Ocean Tile's employees who were injured

---

[1] Saarman contends that Ocean Tile also violated another procedure in relation to the subject accident by removing the outboard horizontal guardrail on Building I and using the scaffold to obtain access to install tile on the second floor lanai.  See Exhibit "G", Saarman answers to interrogatories at no. 19.

7

while working on the project.  See Tsai Declaration at ¶5.  After receiving notice of the claim of Lawrence Deponte's estate and children, Saarman tendered the defense and indemnity of the claims against Saarman to Ocean Tile under the parties' Subcontract and to Ocean Tile's insurers.

State Farm's initial Complaint for Declaratory Judgment sought a declaration that it had no duty to defend or indemnify Saarman for the claims in the Underlying Lawsuit.  See Dkt 1 filed 6/15/16.  At the time, State Farm had twice disclaimed coverage under its Policy to Saarman.  Id. at ¶18.  After State Farm reconsidered its improper denial of defense, State Farm filed a First Amended Complaint for Declaratory Judgment which dropped the request for a declaration that it had no duty to defend.  See Dkt 17 filed 8/24/16.  Accordingly, the First Amended Complaint and the instant motion seek declaratory judgment on State Farm's indemnity obligations even though there are numerous disputed issues of material fact related to liability in the Underlying Lawsuit which prohibit summary judgment for liability coverage at this time.

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment shall be entered when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of

Civil Procedure. The standard for a grant of summary judgment reflects the

standard governing the grant of a directed verdict. *Eisenberg v. Insurance Co. of

North America*, 815 F.2d 1285, 1288 (9th Cir. 1987).

The burden initially lies with the moving party to identify for the court

"those portions of the materials on file that it believes demonstrate the absence of

any genuine issue of material fact." *T.W. Electrical Service, Inc. v. Pacific

Electrical Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex

Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the factual context makes the

nonmoving party's claim implausible, that party must come forward with more

persuasive evidence than would otherwise be necessary to show that there is a

genuine issue for trial." *California Architectural Bldg. Prods., Inc. v. Franciscan

Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis in original).

Interpretation of an insurance policy is a question of law. *Conestoga Services

Corp. v. Executive Risk Indemnity, Inc.*, 312 F.3d 976, 981 (9th Cir. 2002).

### B.     Hawai'i Insurance Law

Under Hawai'i law, " '[i]nsurance policies are subject to the general

rules of contract construction; the terms of the policy should be interpreted

according to their plain, ordinary, and accepted sense in common speech unless it

appears from the policy that a different meaning is intended.'" *Dairy Road*

*Partners v. Island Insurance Co., Ltd.*, 92 Hawaiʻi 398, 411, 992 P.2d 93, 106 (2000) (quoting *First Ins. Co. of Hawaiʻi, Inc. v. State*, 66 Haw. 413, 423-24, 665 P.2d 648, 655 (1983)) (brackets omitted).  Moreover, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy" and as extended by any endorsement attached to and made a part of the policy.  Hawaiʻi Revised Statutes ("HRS") §431:10-237 (2005).

Hawaiʻi courts do not, however, apply a mechanistic reading of insurance contracts but adhere to the proposition that, " '[b]ecause insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, ... they must be construed liberally in favor of the insured and [any] ambiguities [must be] resolved against the insurer.' " *Allstate Ins. Co. v. Ponce*, 105 Hawaiʻi 445, 457, 99 P.3d 96, 108 (2004) (quoting *Sturla, Inc. v. Fireman's Fund Ins. Co.*, 67 Haw. 203, 209, 684 P.2d 960, 964 (1984)) (brackets in original) (emphasis omitted).  In other words, insurance policies are construed in accord with the reasonable expectations of a layperson.  *Id.* at 458, 99 P.3d 96, 99 P.3d at 109 (quoting *Sturla*, 67 Haw. at 209, 684 P.2d at 964).

If the insurer is relying on a policy exclusion to defeat coverage, then "[t]he burden is upon the insurer to provide unequivocal language to bring itself clearly within the exclusion," and "[a]n exclusion clause will be strictly construed against the insurer." *Retherford v. Kama*, 52 Haw. 91, 470 P.2d 517 (1970).

10

## IV.   <u>ARGUMENT</u>

As illustrated by the entire record before this Court, State Farm's Motion for Summary Judgment with respect to indemnity should be denied where there are numerous disputed issues of material fact both in the pending Underlying Lawsuit and this declaratory relief action.

### A.   <u>The Claims in the Underlying Lawsuit Do Not Relate "Solely to Saarman's Alleged Negligence"</u>

To the extent State Farm's Motion for Summary Judgment is founded on the faulty premise that the claims in the Underlying Lawsuit "relate solely to Saarman's own alleged negligence," it should be denied outright.  If this Court were to approve State Farm's motions practice, an insurer could simply take the allegations in the pleadings and offer nothing more for the court's consideration, while ignoring the discovery actually conducted in the Underlying Lawsuit to argue that there is no factual basis for indemnity coverage under its policy.

It is undisputed that because Lawrence Deponte was an employee of Ocean Tile, any direct claim by Mr. Deponte's estate and survivors against Ocean Tile would be barred by the exclusive remedy provisions of the workers compensation law, HRS Chapter 386.  Therefore, State Farm's reliance on the plaintiffs' Complaint in the Underlying Lawsuit as a basis for arguing that the claims only relate to Saarman's alleged negligence and not to Ocean Tile is disingenuous.  <u>See</u> State Farm's memorandum at page 13 (arguing that the

11

Complaint "contains no allegations of negligence or fault of any kind on the part of Ocean Tile.")  As in the typical case where the general contractor / indemnitee has been sued by an injured worker for damages and injuries arising out of a subcontractor / indemnitor's work on the Project, Saarman filed a third-party complaint against Ocean Tile, seeking contractual indemnity pursuant to *Espaniola v. Cawdrey Mars Joint Venture*, 68 Haw. 171, 707 P.2d 365 (1985).

Based on the discovery in the Underlying Lawsuit to date, there is already sufficient evidence to support a finding that Ocean Tile must indemnify and hold Saarman harmless from the claims which arise out of injury to persons connected with Ocean Tile's use of the scaffold.  See Exhibit "A" at Section 5.1.3 That same evidence of Ocean Tile's acts or omissions that led to Mr. Deponte's injuries and death, support a finding that Ocean Tile is further obligated to indemnify, defend and hold harmless Saarman from the claims arising out of Ocean Tile's "operations and/or performance" under the Subcontract, for "[p]ersonal injury, including, but not limited to, bodily injury. . . or death to persons, including, but not limited to, any employees or agents of Subcontractor, . . . caused or alleged to be caused in whole or in part by any negligent act or omission of Subcontractor or anyone directly or indirectly employed by Subcontractor."  See Exhibit "A" at Article 9.

12

**B.**    <u>**The Claims in the Underlying Lawsuit Potentially Fall Within the Scope of Additional Insured Coverage**</u>

As discussed above, Ocean Tile was required to procure liability insurance, for bodily injury, premises and operations, contractual liability and personal injury, and naming Saarman as an additional insured with respect to liabilities arising out of Ocean Tile's performance of the work under the Subcontract.  <u>Id.</u> at §§17.1, 17.3, 17.4, and 17.5.  State Farm's Policy includes two additional insured ("AI") endorsements – one specifically naming Saarman and another by blanket endorsement.  <u>See</u> Exhibits 5 and 6 to State Farm Motion. Here, State Farm actually concedes that the endorsements in its Policy extend AI coverage to Saarman for ongoing operations for bodily injury caused in whole or in part by Ocean Tile's acts or omissions, or the acts or omissions of those acting on Ocean Tile's behalf.  <u>See</u> State Farm memorandum at page 13.

It is undisputed that the claims in the Underlying Lawsuit are for "bodily injury" damages occurring in the performance of Ocean Tile's work on the Project for Saarman.  However, State Farm argues that "Saarman is not an additional insured under the policy" in blatant disregard for the evidence uncovered in the Underlying Lawsuit.  The only way State Farm can argue that Ocean Tile was not responsible for maintaining or inspecting the scaffold, or that Ocean Tile's act or omissions did not "contribute[] in any way to Lawrence's injuries," is to ignore testimony that Ocean Tile was contractually obligated to

13

inspect and in fact inspected the scaffold daily before its use, that Ocean Tile and its employees failed to follow proper procedure when removing the guardrail and using the scaffold to access and install tile on the second floor lanai, and that Ocean Tile and its employees failed to report the accident and seek prompt medical attention for Mr. Deponte which led to his unfortunate death.[2]

The two unreported cases cited by State Farm, including the New Jersey decision in *Schafer v. Paragano Custom Bldg, Inc.*, 2010 WL 624108 (N.J. Super. Ct. App., Feb. 24, 2010), are inapplicable where there has been no determination that the injuries and damages were caused by Saarman's sole negligence.  In *Schafer*, the New Jersey Superior Court found that the only liability at issue was for the general contractor's own acts or omissions, which is simply not the case here.  Similarly, in *Shannon v. B.L. England Generating Station*, 2013 WL 6199173 (D.N.J. Nov. 27, 2013), the parties did not identify any facts relating to the indemnitor's negligence and pointed only premises liability claims.

Meanwhile, the only reported case cited by State Farm in Section III.C., *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 599 (5th Cir. 2011), actually supports a finding of indemnity in favor of Saarman under the State Farm

---

[2] While there are other potential bases for finding that Ocean Tile's acts or omissions, or anyone acting on Ocean Tile's behalf, contributed to Mr. Deponte's injuries and death, these factors at a minimum are sufficient to dispute State Farm's misleading contention that the claims in the Underlying Lawsuit relate to Saarman's sole negligence.

Policy.  While the *Gilbane* Court found that the allegations in the complaint did not support a duty to defend, State Farm's Motion (or First Amended Complaint) is not seeking a ruling on its duty to defend.  With respect to the insurer's duty to indemnify, the *Gilbane* Court concluded that the general contractor was an additional insured, that the subcontract was an "insured contract", and most notably that --

> if the facts proven at trial establish "liability for 'bodily injury' ... caused, in whole or in part, by ... [Empire's] acts or omissions; or ... [t]he acts or omissions of those acting on [Empire's] behalf," then Admiral owed a duty to indemnify.

664 F.3d at 601.  Where the underlying facts in *Gilbane* showed that the injured worker was responsible for his own injuries, the district court properly held that the subcontractor's insurer Admiral owed a duty to indemnify the general contractor – additional insured.  Similarly, where the facts in the Underlying Lawsuit potentially support a finding that Lawrence Deponte and/or others at Ocean Tile caused in whole or in part, his injuries and damages, Saarman is entitled to indemnity as an additional insured under the State Farm Policy.

### C.    The Saarman-Ocean Tile Subcontract Constitutes an "Insured Contract" under the State Farm Policy

In addition to arguing that Saarman does not qualify as an additional insured, State Farm argues that there can be no AI coverage to Saarman where coverage is excluded to its named insured Ocean House under Exclusion 5.

15

However, Exclusion 5 for "Employer's Liability" includes the following specific exception that State Farm fails to discuss in its Motion.

> This exclusion does not apply to liability assumed by the insured under an "insured contract."

The Policy defines "insured contract" in pertinent part as "[t]hat part of any other contract or agreement pertaining to your business. . . under which you assume the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization."  In addition to the two indemnification provisions discussed above, Ocean Tile agreed under the Subcontract to defend, pay and satisfy any judgment, and reimburse Saarman in connection with claims falling within the scope of the indemnity.  Consequently, the Subcontract constitutes an "insured contract" under the Policy based on all of these provisions.

State Farm as the insurer bears the traditional burden of proof that any exclusionary clause applies.  *Intel Corp. v. Hartford Acc. and Indem. Co.*, 952 F.2d 1551, 1557 (9th Cir.1991); *see also Sentinel v. First Ins. Co. of Hawai'i, Ltd.*, 76 Haw. 277, 297, 875 P.2d 894, 914 (1994) ("the insurer carries its traditional burden of proof that an exclusionary clause applies").  Moreover, where the provisions in the Policy are ambiguous or in conflict regarding whether or not Saarman is entitled to coverage under the AI endorsements and/or for an "insured contract", any ambiguity must be resolved against State Farm on this Motion.  As explained by the Hawaii Supreme Court –

16

> Ambiguity in an exception clause is construed in favor of the insured. The burden is upon the insurer to provide unequivocal language to bring itself clearly within the exclusion. An exclusion clause will be strictly construed against the insurer.

*Retherford v. Kama*, 52 Haw. 91, 470 P.2d 517 (1970).  Here, State Farm's Motion fails to address the "insured contract" exception.[3]  Moreover, the Policy further provides for the Separation of Insureds, such that the insurance applies "[s]eparately to each insured against whom claim is made or 'suit' is brought." See Exhibit A at Section II, General Conditions, Section 5.  Therefore, based on the existence of disputed material facts that are unresolved in the Underlying Lawsuit and based on the unresolved questions on whether or not Saarman is entitled to indemnity coverage in this declaratory relief action, State Farm cannot disclaim its duty to indemnify based on the limited information that it has selectively provided to this Court.

**D.    State Farm Has Failed to Conduct a Reasonable Investigation and Instead Chose to File a Premature Motion for Summary Judgment in Violation of Its Obligations as an Insurer**

Having accepted the duty to defend both Saarman and Ocean Tile in the Underlying Lawsuit, State Farm cannot simply rely on allegations in the

---

[3] In yet another unreported case cited by State Farm, *State Farm v. Vidal*, 2013 WL 5786890 (S.D. Inc. Oct. 28, 2013), the underlying claims were factually distinguishable from the Underlying Lawsuit and were made by the named individual insured under the State Farm.  The *Vidal* case also did not discuss the insured contract exception.

17

complaint.  The parties in the Underlying Lawsuit are disputing whether or not Ocean Tile is liable to Saarman under its multiple indemnity obligations based upon a determination whether Ocean Tile or any of its employees (including Mr. Deponte himself) was negligent, and that determination presents a question of fact for the jury in the Underlying Lawsuit.  Pursuant to *Arthur v. State of Hawaiʻi*, an indemnitor's obligations under a construction contract are "determined at the end of litigation".  138 Hawaiʻi 85, 97, 377 P.2d 26 (2016) (citing HRS § 431:10-222).  State Farm's attempt to end-run that process in this declaratory relief action by arguing that the claims relate to Saarman's sole negligence based on the "allegations" rather than the actual evidence being developed in discovery is improper.  Where the determination of additional insured coverage under the State Farm Policy depends on these disputed issues of material fact in the Underlying Lawsuit, State Farm's Motion should clearly be denied as premature and improper as a matter of law.

Under Hawaiʻi law, "as a precondition to refusing the tender on the ground that there is no possibility of coverage, [the insurer] must nevertheless conduct a reasonable investigation to ensure that the facts of the case do not obligate it to defend."  *Dairy Road*, 92 Hawaiʻi at 414-15, 992 P.2d at 109-10.  Here, State Farm has accepted the duty to defend Saarman based on an apparent finding of potential coverage but then refused to look beyond the pleadings and

consider any facts which it could reasonably discover and which could affect

indemnity coverage under its Policy. *Id.* at 414, 992 P.2d at 109 (citing to

*Standard Oil Company of California v. Hawaiian Insurance & Guaranty*

*Company, Ltd.*, 65 Haw. 521, 527, 654 P.2d 1345, 1349 (1982)). Saarman

respectfully submits that State Farm's Motion with respect to whether or not it has

complied with its duty of good faith and fair dealing as an insurer under Hawai'i

law should also be denied.

### E.    State Farm's Motion for Summary Judgment Is Premature and Should Be Denied Pursuant to Rule 56(d)

Pursuant to FRCP Rule 56(d), if it appears from the affidavits or

declarations opposing a motion for summary judgment that facts essential to

support the opposition cannot be presented, the Court may deny the motion, order a

continuance, or make such other order as is just. As mentioned above, fact

discovery in the Underlying Lawsuit is in its preliminary stage. Expert discovery

has not even begun in the Underlying Lawsuit. See Ching Declaration at ¶9. In

the alternative, if this Court does not deny State Farm's Motion outright, Saarman

respectfully submits that it should be denied pursuant to Rule 56(d), where expert

discovery will be critically relevant to the determination by the trier of fact of

which parties' acts or omissions caused the injuries and damages at issue in the

Underlying Lawsuit.

19

## V.    <u>CONCLUSION</u>

Based on the foregoing argument and authority, Saarman respectfully requests that State Farm's Motion for Summary Judgment be denied in its entirety.

Dated:  Honolulu, Hawaii, _____October 31, 2017_____.


/s/ Sheree Kon-Herrera
WESLEY H. CHING
SHEREE KON-HERRERA
Attorneys for Defendant
SAARMAN CONSTRUCTION, LTD.