UNITED STATES DISTRICT COURT

DISTRICT OF HAWAIʻI

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, AN ILLINOIS CORPORATION; | CIV. NO. 16-00315 DKW-KJM |
| Plaintiff, | **ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| SAARMAN CONSTRUCTION, LTD., and OCEAN TILE, LLC, | |
| Defendants. | |

This insurance coverage dispute arises out of a fatal workplace injury to an employee of Ocean Tile, the named insured under a commercial policy placed with State Farm. Before the Court is State Farm's Motion for Summary Judgment ("MSJ") on both its Complaint for Declaratory Judgment, and on the Counterclaim for Declaratory Judgment and for Breach of the Covenant of Good Faith and Fair Dealing filed by Saarman, Ocean Tile's general contractor. MSJ, Dkt. No. 30. For the reasons set forth below, State Farm's MSJ is DENIED.

# BACKGROUND

## I.   Underlying Facts

In 2015, Saarman served as the general contractor for a renovation project located at the Golf Villas at Maunalani Resort (the "Golf Villas") in Waimea, Hawaii (the "Project").  First Am. Compl. ¶ 9, Dkt. No. 17 [hereinafter FAC].  Saarman was hired to plan, conduct, oversee and inspect the renovations associated with the Project (FAC ¶ 9), and towards this end, subcontracted with Ocean Tile to install tiles outside of Building 1, Unit 1 of the Golf Villas (FAC ¶¶ 10, 19, Dkt. No. 17).

On September 16, 2015, Lawrence S. Deponte, an Ocean Tile employee, fell while working on scaffolding Saarman allegedly provided.  Deponte died of his injuries several hours later.  FAC ¶ 12(A), Dkt. No. 17.

On April 8, 2016, Ashley I. Narciso, individually and as the personal representative of Deponte's Estate, commenced an action against Saarman in the Circuit Court of the Third Circuit, State of Hawaii, Civil No. 16-1-126K ("Underlying Lawsuit").  The Underlying Lawsuit alleges that on the date of the workplace accident, Saarman controlled the Project, including the tile work performed by Ocean Tile, and Saarman was therefore liable for the acts and omissions of Ocean Tile under the doctrine of respondeat superior.  FAC ¶¶ 12(B)–

(C), Dkt. No. 17.[1]  The Underlying Lawsuit seeks general and special damages,

including pain and suffering, emotional distress, loss of future earnings, medical

expenses, funeral and burial expenses, and all other damages provided in Hawaiʻi

Revised Statutes ("HRS") § 663-3.  FAC ¶ 13, Dkt. No. 17.  There is also a

"survivors' claim" asserted by Deponte's two children that seeks general and

special damages, including emotional distress, loss of consortium, society,

companionship, comfort, support, economic support, care and attention, under

HRS § 663-3.[2]

On June 12, 2016, Saarman filed a Third-Party Complaint against Ocean

Tile in the Underlying Lawsuit ("Underlying Third-Party Complaint").  FAC ¶ 15,

Dkt. No. 17; *see* Harada-Stone Decl., Ex. 1 [Underlying Third-Party Compl.] at 8–

28, Dkt. No. 31-2.  In it, Saarman denies having caused or contributed to the

---

[1]The Underlying Lawsuit alleges that Saarman: (i) owed Deponte a duty to provide a safe, hazard-free work place (FAC ¶ 12(D), Dkt. No. 17), and breached that duty by both negligently failing to properly supervise the tile work and the associated use of scaffolding (FAC ¶ 12(E)), and by failing to ensure that the tile work was performed "in accordance with all proper workplace safety laws and standards" (FAC ¶ 12(F)); (ii) owed Deponte a duty to keep the scaffolding equipment in a reasonably safe condition and correct or warn of dangerous conditions of which Saarman had notice, and breached that duty by both negligently failing to inspect and maintain the equipment despite knowledge of dangerous conditions, and by failing to adequately warn the Project's workers of such dangerous conditions (FAC ¶ 12(G)); (iii) failed to keep the scaffolding equipment in a safe condition and maintain compliance with safety codes and laws and standards (FAC ¶ 12(J)); and (iv) failed to employ or require others to employ special precautions even though Saarman should have known that the subject incident presented a peculiar risk of harm, unless special precautions were taken (FAC ¶ 12(K)).

[2]Deponte's estate has also allegedly submitted a claim to Ocean Tile for workers' compensation benefits under Ocean Tile's workers' compensation insurance policy.  FAC ¶ 22, Dkt. No. 17.

injuries and damages alleged by the plaintiffs in the Underlying Lawsuit

("Underlying Plaintiffs") (Underlying Third-Party Compl. ¶¶ 5–6, Dkt. No. 31-2 at

10); Saarman argues that if Underlying Plaintiffs suffered the injuries and damages

asserted therein, then "such injuries or damages were caused by the negligence,

strict liability, breach of warranty, breach of contract, improper acts or omissions,

wrongdoing or breach of duty on the part of Ocean Tile and other Third-Party

Defendants (Underlying Third-Party Compl. ¶ 7, Dkt. No. 31-2 at 3); and Saarman

contends that

> if any judgment is entered against Defendant and Third Party
> Plaintiff Saarman, such damages, costs, expenses and attorneys'
> fees will have been caused by Ocean Tile and other Third-Party
> Defendants for whom Saarman is entitled to written
> indemnification, indemnification, contribution, subrogation
> and/or reimbursement from Ocean Tile and other Third-Party
> Defendants for the entire amount of such judgment, if any,
> rendered against Saarman, together with its expenses, costs and
> reasonable attorneys' fees.

(Underlying Third-Party Compl. ¶ 8, Dkt. No. 31-2 at 3).  *See* FAC ¶¶ 16–18.

In Count II of the Underlying Third-Party Complaint, Saarman also alleges

that the Subcontract Agreement between Saarman and Ocean Tile signed on or

about April 2, 2015 ("Subcontract"), obligated Ocean Tile to "indemnify, defend

and hold harmless Saarman from and against claims, demands, causes of action,

damages, costs, expenses, actual attorney's fees, losses or liability arising out of or

in connection with Ocean Tile's operation and/or performance under the

Subcontract Agreement." Ching Decl., Ex. A [Subcontract] § 11, Dkt. No. 34-3 at 11; *see also* FAC ¶ 20, Dkt. No. 17. As such, the Subcontract allegedly entitles Saarman to a "full and complete defense and indemnification from Ocean Tile for the claims asserted against Saarman" in the Underlying Lawsuit. Subcontract § 12, Dkt. No. 34-3 at 12; FAC ¶ 20.

Ocean Tile has tendered the Underlying Third-Party Complaint to State Farm pursuant to Ocean Tile's policy, and State Farm is defending Ocean Tile against the Underlying Third-Party Complaint pursuant to a reservation of rights. FAC ¶ 25, Dkt. No. 17; *see also* Ocean Tile Counterclaim ¶¶ 8–10, Dkt. No. 24-1.

## II. Contracts and Insurance Documents

State Farm's MSJ implicates the parties' various insurance and other agreements, the relevant provisions of which are described below.

### State Farm–Ocean Tile Policy

State Farm issued a Business Owners Coverage insurance policy to Ocean Tile, Policy No. 91-BF-C578-3 (the "Policy"), that spans the policy period from January 1, 2015 to January 1, 2016. FAC ¶ 23. *See* Corder Decl., Exs. 3 [Policy Declarations], Dkt. No. 31-5; 4 [Businessowners Coverage Form CMP-4100], Dkt. No. 31-6; 5 [Sched. Endorsement CMP-4786], Dkt. No. 31-7; 6 [Blanket Endorsement CMP-4785], Dkt. No. 31-8.

The Policy generally obligates State Farm to provide coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'" and preserves "the right and duty to defend the insured against any 'suit' seeking those damages" provided, however, that there will be "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury[]' . . . to which this insurance does not apply." Coverage Form, Section II—Business Liability ¶ 1, Dkt. No. 31-6 at 24. The Policy further states:

> 2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:
>
> a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";
>
> b. This insurance applies to such liability assumed by the insured; [and]
>
> c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract"; . . . .

Coverage Form, Section II—Suppl. Payments ¶ 2, Dkt. No. 31-6 at 25.

Under exclusions, the Policy specifies that coverage does not include "any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law" (Coverage Form, Section II—Exclusions ¶ 4, Dkt. No. 31-6 at 26) or "employer's liability" for "bodily injury" to "[a]n

'employee' or a former 'employee' of the insured arising out of and in the course of . . . (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business" (Coverage Form, Section II—Exclusions ¶ 5a, Dkt. No. 31-6 at 26)). *See also* Coverage Form, Section II—Exclusions ¶ 5b, Dkt. No. 31-6 at 26 (explaining that the employer's liability exclusion applies "[w]hether the insured may be liable as an employer or in any other capacity," and "[t]o any obligation to share damages with or repay someone else who must pay damages because of the injury," but it "does not apply to liability assumed by the insured under an 'insured contract'").

Under the Policy's Endorsement CMP-4786, Saarman is listed as an additional insured for both ongoing and completed operations. Policy Decl. at 6, Dkt. No. 31-5; *see also* Counterclaim for Declaratory & Related Relief ¶¶ 12, 13, Dkt. No. 22-1 [hereinafter Saarman Counterclaim]. As an "additional insured," Saarman is covered under the Policy "with respect to liability for 'bodily injury' caused, in whole or in part," by the insured's "acts or omissions" or "[t]he acts or omissions of those acting on [the insured's] behalf . . . in the performance of . . . ongoing operations for that additional insured." Sched. Endorsement CMP-4786, Section II—Who Is An Insured ¶ 1a, Dkt. No. 31-7. Additionally, "[a]ny insurance provided to the additional insured shall only apply with respect to a claim made or a 'suit' brought for damages for which [the insured is] provided

coverage," and "[t]he insurance afforded the additional insured shall be primary insurance."  Sched. Endorsement CMP-4786, Section II—Who Is An Insured ¶¶ 2, 3, Dkt. No. 31-7.  And with regard to "Separation of Insureds," the Policy sets forth the following:

> Except with respect to the SECTION II—LIMITS OF INSURANCE, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:
>
> a.    As if each Named Insured were the only Named Insured; and
>
> b.    Separately to each insured against whom claim is made or "suit" is brought."

Coverage Form, Section II—General Conditions ¶ 5, Dkt. No. 31-6 at 35.

*Saarman–Ocean Tile Subcontract*

On April 2, 2015, Saarman, as "Contractor," entered into a Subcontract (Dkt. No. 34-3) with Ocean Tile, as "Subcontractor," for the installation of tile on the exterior of the Golf Villas.  *See* Saarman Counterclaim ¶ 8, Dkt. No. 22-1.

Article 9 of the Subcontract (*see* Dkt. No. 34-3 at 15–16) obligates Ocean Tile to indemnify Saarman from claims "arising out of or in connection with Subcontractor's operations and/or performance under this Subcontract."  These covered claims include, but are not limited to, those arising out of: personal injury (Subcontract § 9.1.1), judicial penalties (Subcontract § 9.1.2), and failure to comply with the Subcontract's insurance provisions (Subcontract § 9.1.6); "[a]ny

8

violation or infraction by Subcontractor of any law, order, citation, rule, regulation, standard, ordinance or statute in any way relating to the occupational health or safety of employees including, but not limited to, safety regulations, the use of any Indemnitee's or other's . . . scaffolds," except that "Subcontractor . . . shall not be obligated under this Subcontract to indemnify an Indemnitee for Claims arising from the sole negligence and/or willful misconduct of an Indemnitee or their agents, employees or independent contractors who are directly responsible to an Indemnitee" (Subcontract § 9.1.7). The Subcontract's indemnification provisions also state that the Subcontractor shall:

> 9.2.1 . . . [D]efend all Claims that may be brought or instituted by third persons, including, but not limited to, . . employees of Subcontractor, against any Indemnitee;
>
> 9.2.2 Pay and satisfy any judgment or decree that may be rendered against any Indemnitee or their agents or employees, or any of them, arising out of such Claim; and/or
>
> 9.2.3 Reimburse any Indemnitee for any and all legal expense incurred by them in connection herewith or in enforcing the indemnity granted in this Indemnification Rider.

Subcontract §§ 9.2.1–9.2.3, Dkt. No. 34-3 at 16.

Article 17 of the Subcontract (Dkt. No. 34-3 at 22–25) requires Ocean Tile to procure Commercial General Liability insurance, with minimum limits of not less than $1,000,000 each occurrence, to cover bodily injury (Subcontract §§ 17.2.2, 17.4.1). *See* Saarman Counterclaim ¶ 9, Dkt. No. 22-1. Saarman claims

that "[t]he Subcontract between Saarman Construction and Ocean Tile constitutes an insured contract under [Ocean Tile's] . . . Policy" with State Farm.  Saarman Counterclaim ¶ 14, Dkt. No. 22-1.

## III.  Procedural Background

State Farm initiated this action on June 15, 2016.  Compl., Dkt. No. 1.

*State Farm's First Amended Complaint*

State Farm filed its First Amended Complaint for Declaratory Judgment on August 24, 2016.  FAC, Dkt. No. 17.  The FAC seeks two binding declarations— (1) "that State Farm has no duty to indemnify Saarman for the claims asserted against it in the Underlying Lawsuit or for any claims that may arise out of the subject matter of the Underlying Lawsuit"; and (2) "that State Farm has no duty to indemnify Ocean Tile for the claims that may arise out of the subject matter of the Underlying Third-Party Complaint."  FAC at 15, Dkt. No .17.

Saarman answered State Farm's FAC on September 12, 2016 (Dkt. No. 22 at 2–7), and Ocean Tile answered on September 30, 2016 (Dkt. No. 24).  Saarman also filed its own claims against both State Farm (*see* Saarman Counterclaim, Dkt. No. 22-1) and against Ocean Tile (*see* Cross-Claim Against Defendant Ocean Tile, LLC, Dkt. No. 22-2 [hereinafter Saarman Cross-Claim]).

*Saarman's Claims*

In its Counterclaim against State Farm, Saarman pleads two causes of action. Saarman Counterclaim, Dkt. No. 22-1.  In Count I for Declaratory Relief (*id.* at ¶¶ 11–18), Saarman alleges that State Farm owes a "duty to defend and indemnify Saarman" under the Policy "with respect to the claims alleged against Saarman . . . in the Underlying Lawsuit" (*id.* at ¶ 15).  Saarman "tendered the defense of the Underlying Lawsuit to [State Farm]" pursuant to this duty, and alleges that "[State Farm] accepted the tender of defense pursuant to a reservation of right letter dated June 2, 2016."  Saarman Counterclaim ¶ 16, Dkt. No. 22-1.  In Count II (*id.* at ¶¶ 19–24), Saarman further alleges that State Farm has breached its Duty of Good Faith and Fair Dealing "by refusing to defend Saarman . . . without reservation and/or indemnify Saarman . . . for the claims made against it in the Underlying Lawsuit" (*id.* at ¶ 22), and by "misrepresenting the benefits, conditions or terms of coverage, and/or by other actions inconsistent with its duties to protect the interests of its insureds and to place its interests ahead of the interests of its insureds, including Saarman" (*id.* at ¶ 23).  Saarman claims that it suffered damages from the actions alleged, and therefore prays for defense/indemnity costs, among others, as relief.

State Farm answered Saarman's Counterclaim on September 30, 2016 (Dkt. No. 23), arguing that even though "Saarman was named as an additional insured

under the Policy by endorsement CMP-4786[,] State Farm denies that Saarman qualifies as an additional insured under the Policy" (State Farm SC-Answer ¶ 9, Dkt. No. 23), denies "that it has any obligation to indemnify, defend, or otherwise contribute to any judgment against Saarman in the Underlying Lawsuit" (*id.* at ¶ 18), and asserts that Saarman's claims are barred under the terms and conditions of the Policy and the declarations and endorsements contained therein (*id.* at ¶ 19, Dkt. No. 23).

In its Cross-Claim against Ocean Tile, filed September 12, 2016 (Dkt. No. 22-2), Saarman brings claims for "Declaratory Relief" (Saarman Cross-Claim at ¶¶ 9–14, Dkt. No. 22-2 (Count I)) and for "Indemnity, Contribution, Subrogation" (Saarman Cross-Claim at ¶¶ 15–18 (Count II)). In support of Count I for Declaratory Relief, Saarman alleges that "the Subcontract Agreement obligates Ocean Tile to the fullest extent permitted by law to indemnify, defend and hold harmless Saarman" from various claims and liability "arising out of or in connection with Ocean Tile's operations and/or performance under the Subcontract Agreement." Saarman Cross-Claim ¶ 11, Dkt. No. 22-2. As a result, Saarman states that it is "entitled to a full and complete defense and indemnification from Ocean Tile for the claims asserted against Saarman in the Underlying Lawsuit" (Saarman Cross-Claim ¶¶ 12–14). With respect to Count II for "Indemnity, Contribution, Subrogation," Saarman alleges:

> If State Farm prevails on its claims resulting in the denial of defense
> and indemnity coverage to Saarman Construction and/or
> reimbursement of any funds expended by any other party on behalf
> of or through Saarman Construction, then Saarman Construction is
> entitled to indemnification, contribution, subrogation and/or
> reimbursement from Ocean Tile for the damages, costs, expenses and
> attorneys' fees incurred by Saarman Construction.

Saarman Cross-Claim ¶ 17, Dkt. No. 22-2.

*Ocean Tile's Claims*

On September 30, 2016, Ocean Tile filed a Counterclaim for Declaratory Judgment against State Farm. Ocean Tile Counterclaim, Dkt. No. 24-1 [hereinafter OT Counterclaim]. After Ocean Tile tendered defense of Saarman's Underlying Third-Party Complaint to its insurer (State Farm), State Farm "accepted defense of the Underlying Third-Party Complaint against Ocean Tile" and "is currently providing Ocean Tile a defense in the [Underlying] [L]awsuit." OT Counterclaim ¶¶ 8–10, Dkt. No. 24-1. Indeed, Ocean Tile states that its "[r]eceipt of the [FAC] in this matter was the first indication from State Farm to Ocean Tile that State Farm believed it was not obligated to defend Ocean Tile" in the Underlying Lawsuit. OT Counterclaim ¶ 11, Dkt. No. 24-1. As a result, Ocean Tile "requests a declaratory judgment that State Farm must defend and indemnify Ocean Tile in the [Underlying] [L]awsuit pursuant to 28 U.S.C. § 2201." OT Counterclaim ¶ 13, Dkt. No. 24-1.

State Farm answered the allegations in Ocean Tile's Counterclaim on November 21, 2016. State Farm OT-Answer, Dkt. No. 25. In the answer, State Farm "denies it 'accepted' defense of the [Underlying] Third Party Complaint against Ocean Tile," and instead represents that "State Farm agreed to participate in Ocean Tile's defense *subject to a full reservation of State Farm's rights*" under the Policy. State Farm OT-Answer ¶ 6, Dkt. No. 25 (emphasis added). State Farm also contends that "Ocean Tile's claim for relief is barred pursuant to the terms and conditions of the . . . Policy and the declarations and endorsements contained therein" and urges dismissal with prejudice of Ocean Tile's Counterclaim. State Farm OT-Answer ¶¶ 11, 13A, Dkt. No. 25.

### *State Farm Motion for Summary Judgment*

State Farm seeks summary judgment against Saarman on (1) State Farm's Complaint for Declaratory Judgment, and (2) Saarman's Counterclaim for declaratory judgment and for breach of the covenant of good faith and fair dealing. MSJ, Dkt. No. 30. State Farm principally asserts that "[b]ecause the claims [in the Underlying Complaint] relate solely to Saarman's own alleged negligence, and because Ocean Tile is not covered for such claims under the . . . [P]olicy, there is no [P]olicy coverage for the claims for Saarman as an additional insured." Mem. in Supp. of MSJ at 2, Dkt. No. 30-1 (relying on "Employer's Liability" exclusion

to the Policy).  As such, State Farm asks the Court to declare "that it has no duty to indemnify Saarman" for claims in the Underlying Lawsuit.  *Id.*

The Court heard oral arguments on State Farm's MSJ on November 21, 2017 (*see* EP, Dkt. No. 40), after which the Court took matters under advisement. The instant disposition follows.

## **LEGAL STANDARD**

Pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citing *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990)).  Once

the moving party has satisfied its initial burden of production,[3] the burden shifts to the party opposing summary judgment "to demonstrate the existence of a genuine dispute." *Kowalski v. Mommy Gina Tuna Res.*, 574 F. Supp. 2d 1160, 1162 (D. Haw. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). To meet this burden, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts" and instead must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec.*, 475 U.S. at 586–87 (citations and internal quotation marks omitted). At least some "significant probative evidence tending to support the complaint" must be produced. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)); *see also Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal.*

---

[3]"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins.* at 1102–03 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *High Tech Gays*, 895 F.2d at 574; A. Friedenthal, A. Miller, & M. Kane, Civil Procedure 460 (3d ed. 1999)).

*Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc*., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Matsushita Elec.*, 475 U.S. at 587); *accord Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion."). For, if no evidence can be mustered to sustain the nonmoving party's position, a trial would be useless. *See Kahumoku v. Titan Mar., LLC*, 486 F. Supp. 2d 1144, 1150 (D. Haw. 2007) (explaining that one of the primary purposes of summary judgment is to "isolate and dispose of factually unsupported claims or defenses") (quoting *Celotex*, 477 U.S. at 323–24).

"[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

With these basic principles in mind, the Court turns to the merits of State Farm's MSJ (Dkt. No. 30).

# DISCUSSION

## I.      Principles of Insurance Coverage in Hawaiʻi

Insurance policies are a form of contract and subject to the general rules of contract construction.  As such, their terms must be interpreted according to their ordinary, commonly accepted meaning, unless it appears from the language of the policies that a different meaning is intended.  *C. Brewer & Co. v. Marine Indem. Ins. Co. of Am.*, 347 P.3d 163, 169 (Haw. 2015) (quoting *Dairy Rd. Partners v. Island Ins. Co.*, 992 P.2d 93, 106 (Haw. 2000)); *accord Dawes v. First Ins. Co. of Haw.*, 883 P.2d 38, 42 (Haw. 1994).

Courts in Hawaiʻi construe insurance policies "liberally in favor of the insured and the ambiguities [are] resolved against the insurer."  *Fortune v. Wong*, 702 P.2d 299, 305 (Haw. 1985) (quoting *Masaki v. Columbia Cas. Co.*, 395 P.2d 927, 929 (Haw. 1964)) (additional citations omitted).  Moreover, "any ambiguity in an exclusionary clause is construed in favor of the insured and 'strictly construed against the insurer.'"  *C. Brewer & Co.*, 347 P.3d at 169 (quoting *Retherford v. Kama*, 470 P.2d 517 (1970)).  Nonetheless, the Hawaii Supreme Court has clearly explained that the construction of ambiguities against an insurer does not come into play merely because the insured party alleges ambiguity, nor does it come into play simply because the parties to the dispute disagree about the underlying policy's terms.  Mem. in Supp. at 11–12, Dkt. No. 30-1 (citing *Oahu Transit*

18

*Servs., Inc. v. Northfield Ins. Co.*, 112 P.3d 717, 722 n.7 (Haw. 2005)).  Rather, "[a]mbiguity exists and the rule is followed only when the [underlying insurance policy], taken as a whole, is reasonably subject to differing interpretation."  *Oahu Transit Servs.*, 112 P.3d at 722 n.7.

## II.     Applicability of the "Employer's Liability" Exclusion to Coverage

The Subcontract is an "insured contract" under the Policy, and State Farm has failed to meet its burden demonstrating that an exclusion to coverage applies. *Cf. Sentinel Ins. Co.*, 875 P.2d at 914 (noting insurer's "traditional burden of proof that an exclusionary clause applies) (citing *Polaroid Corp. v. Travelers Indem. Co.*, 610 N.E.2d 912, 922 n.2 (Mass. 1993)).

In support of its argument that the Policy does not cover Ocean Tile, and therefore does not cover Saarman, State Farm points to the Policy's "Employer's Liability" exclusion.  That exclusion applies to "bodily injury" of an employee of the insured arising out of, and occurring in the course of the employee's "duties related to the conduct of the insured's business."  Coverage Form, Section II—Exclusions ¶ 5a, Dkt. No. 31-6 at 26.  Both Saarman and Ocean Tile point to an exception to this exclusion, however, which provides that otherwise excluded coverage is covered under the policy when it involves "liability assumed by the insured under an 'insured contract.'"  Coverage Form, Section II—Exclusions ¶ 5b, Dkt. No. 31-6 at 26.  *See, e.g.*, Saarman Opp'n at 15–16, Dkt. No. 35.

19

An "insured contract" is defined as "[t]hat part of any other contract or agreement pertaining to [the named insured's] business (including an indemnification of a municipality in connection with work performed for a municipality) under which [the named insured] assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."  Coverage Form, Section II—Definitions ¶ 10(f).  Here, the Subcontract between Saarman and Ocean Tile contains an indemnity provision that applies to "bodily injury . . . or death to persons, including, but not limited to, any employees or agents of Subcontractor . . . , regardless of whether such personal injury or damage is caused by an Indemnitee."  Subcontract § 9.1.1, Dkt. No. 34-3 at 15.  The Subcontract therefore is an "insured contract" within the meaning of the Policy,[4] rendering as misplaced the exclusion on which State Farm attempts to rely.

Viewing the facts in the light most favorable to Ocean Tile and Saarman, as the parties opposing summary judgment, *Scott*, 550 U.S. at 378 (citing *Diebold*, 369 U.S. at 655), and interpreting the policy liberally in favor of the insured and against State Farm as the insurer, *Fortune*, 702 P.2d at 355 (citing *Masaki*, 395

---

[4]Even State Farm appears to agree.  *See* Reply at 7–8, Dkt. No. 38.  State Farm's further assertion that "it is only Ocean Tile's potential contractual liability assumed under that insured contract that may be covered, not any direct liability to the underlying plaintiffs for its employee's injury" (*id*. at 8) is a nuance, the import of which is lost on the court.

P.2d at 929), the Subcontract is an "insured contract" under the Policy's definition, and no Policy exclusions apply.

## III.    "Additional Insured Coverage" For the Underlying Lawsuit

The parties also disagree about whether Saarman can qualify for additional insured coverage with respect to the Underlying Lawsuit even though the Underlying Plaintiffs do not direct any claims against Ocean Tile, the insured.

At the November 21, 2017 hearing on the instant MSJ, for example, State Farm's attorney argued that, to be covered under the Policy, claims in the Underlying Lawsuit must involve the actions or omissions of the insured.  State Farm's attorney reasoned that the only way State Farm could owe coverage to Saarman under the Policy in the Underlying Lawsuit is if the Underlying Plaintiffs sought to impose liability on Ocean Tile.  State Farm continues that because *plaintiffs* in the Underlying Lawsuit—*e.g.*, Deponte's Estate—did not allege that Ocean Tile itself was negligent with respect to the underlying incident on September 16, 2015 (*see* Ocean Tile's Opp'n at 9, Dkt. No. 36 (conceding the same)), then the Additional Insured Coverage provision is not triggered.  *See also* Mem. in Supp. at 13, Dkt. No. 30-1.  These arguments are incorrect for two reasons.

First, the claims in the Underlying Lawsuit do not relate "solely to Saarman's alleged negligence."  Indeed, the evidence below—for example,

showing that Deponte spent a significant number of hours at home after his fall prior to seeking medical attention and prior to notifying Saarman—demonstrates that Ocean Tile may be partly at fault for the alleged damages sought by Deponte's Estate. Thus, no matter what the pleadings alone allege, Ocean Tile could very well be responsible for and/or owe Saarman indemnity in the Underlying Lawsuit. *See* Saarman Opp'n at 18, Dkt. No. 35 ("The parties in the Underlying Lawsuit are disputing whether or not Ocean Tile is liable to Saarman under its multiple indemnity obligations based upon a determination whether Ocean Tile or any of its employees (including [Deponte] himself) was negligent, and that determination presents a question of fact for the jury in the Underlying Lawsuit.").

Second, the Underlying Third-Party Complaint may serve as the touchstone for Saarman's coverage as an additional insured under the Policy. That is, in the Underlying Lawsuit, although *Deponte's Estate* does not assert claims directly against Ocean Tile,[5] Saarman has filed a Third-Party Complaint that does. State Farm assumes that for underlying claims to trigger Policy coverage, they must have been *brought by plaintiffs* in that suit—here: Deponte's Estate. Yet no authority for that limitation has been offered. Moreover, the Policy itself has no provision stating that the claims against Ocean Tile, which trigger coverage, cannot be brought by the prospective additional insured. In light of the liberal standards

---

[5]The Underlying Plaintiffs do not do so apparently because of the worker's compensation bar. *See* Saarman Opp'n at 11, Dkt. No. 35.

of insurance contract interpretation in Hawaiʻi, and in the absence of any authority directing otherwise, the Court resolves uncertainty with respect to the additional-insured-coverage provision under the Policy in Saarman's favor. *See Fortune*, 702 P.2d at 355 (citing *Masaki*, 395 P.2d at 929).

Because disputed issues of material fact remain in the Underlying Lawsuit so as to prevent the Court from making a final determination of additional insured coverage under the Policy at this time,[6] the Court holds that State Farm is not entitled to summary judgment.

## IV.    Breach of Covenant of Good Faith and Fair Dealing

State Farm moves for summary judgment against Saarman on Saarman's Counterclaim for Breach of the Covenant of Good Faith and Fair Dealing. *See* Mem. in Supp. at 19–20, Dkt. No. 30-1. Summary judgment on this claim is DENIED.

In Count II of Saarman's Counterclaim, Saarman alleges that State Farm owes all of its insureds, including Saarman, "duties of good faith and fair dealing." Saarman Counterclaim ¶ 20, Dkt. No. 22-1. State Farm allegedly breached this duty by "refusing to defend Saarman . . . without reservation and/or indemnify

---

[6]It is firmly established that in Hawaii, an indemnitor's obligations under a construction contract are "determined at the end of litigation." *See Arthur v. State of Haw.*, 377 P.3d 26, 38 (Haw. 2016). At present, however, the Underlying Lawsuit remains unresolved. Until that changes, "any attempt to determine whether State Farm must indemnify" either of the Defendants in this matter is premature. *See* Ocean Tile Opp'n at 13, Dkt. No. 36; *accord* Saarman Opp'n at 18, Dkt. No. 35.

Saarman . . . for the claims made against it in the Underlying Lawsuit," by "misrepresenting the benefits, conditions or terms of coverage, and/or by other actions inconsistent with its duties to protect the interests of its insureds and to place its interests ahead of the interests of its insureds, including Saarman." Saarman Counterclaim ¶ 23, Dkt. No. 22-1. State Farm denies these allegations (Dkt. No. 23 at 4), and in its MSJ, argues that its "coverage position" regarding the Policy "is a reasonable one." Mem. in Supp. at 20, Dkt. No. 30-1 ("State Farm has fully performed under the Policy, even while asking this [C]ourt to rule on its rights and obligations."). Questions of material fact remain on this claim and preclude summary judgment at this time.

Hawaiʻi law "recognizes a bad faith cause of action in the first-party insurance context." *Best Place, Inc. v. Penn Am. Ins. Co.*, 920 P.2d 334, 341 (Haw. 1996). However, it is also true that "an insurer's conduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith; moreover, an erroneous decision not to pay a claim for benefits due under a policy does not by itself prove liability" without also demonstrating that the decision not to pay the claim was made in "bad faith." *Miller v. Hartford Life Ins. Co.*, 268 P.3d 418, 431 (Haw. 2011) (quoting *Best Place*, 920 P.2d at 347); *see also Enoka v. AIG Haw. Ins. Co., Inc.*, 128 P.3d 850, 865 (Haw. 2006) ("[W]here an insurer denies the payment of no-fault benefits based on an 'open question of

law,' there is 'obviously no bad faith on the part of the insurer in litigating that issue'").  Indeed, an insurer uncertain as to whether coverage exists "may file a declaratory judgment action to determine whether it is required to defend[;] it can defend under a nonwaiver agreement or reservation of rights, or it can refuse to defend and risk the consequences."  *Nautilus Ins. Co. v. Lexington Ins. Co.*, 321 P.3d 634, 644 (Haw. 2014) (citing 22 Appleman, *Ins. Law & Practice* § 136.7, at 45 (2003)).  The Hawaii Supreme Court has explained that, by filing a declaratory judgment action to determine whether it is required to defend, a primary insurer such as State Farm is able "to determine coverage issues, 'allowing the insurer to address the limits of its duty to defend without risking a later finding that it acted in bad faith.'"  *Id.* at 644 (quoting 22 Appleman § 136.7, at 50).

That appears to be precisely what State Farm has done here.  State Farm has both "disputed coverage in a declaratory judgment action" by filing the FAC while also "defending Saarman under a reservation of rights."  Mem. in Supp. at 23, Dkt. No. 30-1; *see, e.g.*, FAC ¶¶ 24, 25, Dkt. No. 17 (alleging that "State Farm is defending Saarman in the Underlying lawsuit pursuant to a reservation of rights" and that "State Farm is defending Ocean Tile in the Underlying Third Party Complaint pursuant to a reservation of rights").  As such, State Farm might be correct in contending that it "is entitled to summary judgment on Saarman's claim for breach of the covenant of good faith and fair dealing because" these actions

25

have been "entirely proper and not evidence of bad faith." Mem. in Supp. at 19, Dkt. No. 30-1 (citing *Nautilus*, 321 P.3d at 644).

Nonetheless, in opposition to State Farm's MSJ, Saarman argues that "State Farm has accepted the duty to defend Saarman based on an apparent finding of potential coverage but then refused to look beyond the pleadings and consider any facts which it could reasonably discover and which could affect indemnity coverage under its Policy." Saarman Opp'n at 18–19, Dkt. No. 30-1 (citing *Dairy Rd. Partners v. Island Ins. Co., Ltd.*, 992 P.2d 93, 109–10 (Haw. 2000); *Standard Oil Co. of Calif. v. Hawaiian Ins. & Guaranty Co., Ltd.*, 654 P.2d 1345, 1349 (Haw. 1982)). Those facts include those described in Saarman's Opposition, which suggest negligence by Ocean Tile, and which State Farm appears to have largely ignored. The Court has no evidence that State Farm could not have discovered these facts, either before or after its reservation of rights with respect to its obligations under the Policy. It follows, then, that the Court cannot say at this time that State Farm has adopted a "reasonable interpretation" by defending the Underlying Lawsuit, subject to a reservation of rights, or by seeking to avoid indemnity coverage altogether by moving for summary judgment now. Genuine issues of material fact remain.

## CONCLUSION

Viewing the facts and drawing reasonable inferences in the light most favorable to Saarman and Ocean Tile, the Court determines that genuine issues of material fact exist that preclude awarding summary judgment to State Farm. The MSJ (Dkt. No. 30) is therefore DENIED.

IT IS SO ORDERED.

DATED: March 5, 2018 at Honolulu, Hawaiʻi



Derrick K. Watson
United States District Judge

---

*State Farm Fire And Casualty Company v. Saarman Construction*, CIV. NO. 16-00315 DKW; **ORDER DENYING MOTION FOR SUMMARY JUDGMENT**